UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FRED PERRY,

      Plaintiff,

      v.                                        Case No. 06-C-0101

CITY OF MILWAUKEE HOUSING
AUTHORITY, ANTONIO PEREZ,
LOU WILLIAMS, and HEIDI SCHULTZ,

      Defendants.

**DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

### I. PROCEDURAL BACKGROUND

This action was commenced on January 23, 2006, when the plaintiff, Fred Perry ("Perry"), filed a complaint and a motion for leave to proceed in forma pauperis. On May 26, 2006, the judge to whom the case was originally assigned, Chief Judge Rudolph T. Randa, issued an order holding in abeyance any ruling on Perry's motion to proceed in forma pauperis, pending Perry's filing an amended complaint, substituting the City of Milwaukee as a defendant for The Rent Assistance Program, which program Perry originally named as a defendant. Thereafter, on June 7, 2006, Perry filed an amended complaint, naming the City of Milwaukee Housing Authority ("the City" or "Milwaukee"), Antonio Perez ("Perez"), Lou Williams ("Williams"), and Heidi Schultz ("Schultz") as defendants.

On June 9, 2006, Chief Judge Randa issued an order granting Perry's request for leave to proceed in forma pauperis. Specifically, Chief Judge Randa ruled that

Perry will be allowed to proceed against Milwaukee on his claim for judicial review of the administrative decision denying him benefits under Section 8 of the Housing Act of 1937 ("Section 8"), 42 U.S.C. § 1437f. Perry will also be allowed to proceed on his claim under 42 U.S.C. § 1983 that the defendants Milwaukee, Antonio Perez ("Perez"), Lou Williams ("Williams"), and Heidi Schultz ("Schultz") (collectively "the Defendants") violated his Fourteenth Amendment right to procedural due process.

Subsequently, the parties consented to magistrate judge jurisdiction and the case was reassigned to this court. At its heart, Perry's complaint is predicated on Perry's denial of housing benefits under Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f, based on Perry's November 2, 2003 arrest for domestic battery and his June 20, 2004 arrest for domestic battery.

Currently before the court is the defendants' motion for summary judgment, which is fully briefed and is ready for resolution. For the reasons which follow, the defendants' motion for summary judgment will be granted.

## II. FACTUAL BACKGROUND

In accordance with Civil Local Rule 56.2(a) (E.D. Wis.), the defendants submitted a set of proposed findings of fact along with their summary judgment papers. Pursuant to Civil Local Rule 56.1, the defendants' summary judgment papers also included a notice to Perry indicating that any assertion of fact set forth in the defendants' proposed findings of fact would be accepted as true unless Perry submitted his own affidavit or other documentary evidence contradicting such factual assertions. However, Perry's written submission in opposition to the defendants' motion did not include responses to the defendants' proposed findings of fact, as required under Civ. L.R. 56.2(b). Thus, in accordance with Civil L.R. 56.2(e), "the Court must conclude that there is no genuine material issued as to any proposed finding of fact" set out by the defendants. The facts set out by the defendants are as follows.
2

Case 2:06-cv-00101-WEC   Filed 04/18/07   Page 2 of 16   Document 39

The plaintiff applied for benefits under Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f. (Defs.' Proposed Finding of Fact ("DPFOF") ¶ 1.) The City of Milwaukee Housing Authority denied the plaintiff's application for benefits under correspondence dated November 17, 2005. (DPFOF ¶ 2.) The denial was based on the plaintiff's November 2, 2003 arrest for domestic battery and his June 20, 2004, arrest for domestic battery. (DPFOF ¶ 3.)

Together with the November 17, 2005, letter denying his application for Section 8 benefits, the Housing Authority provided the plaintiff copies of the criminal complaint and police report, which the Housing Authority used to support its decision. (DPFOF ¶ 4.) The plaintiff requested and was granted an informal review on that denial, which was scheduled for December 15, 2005. (DPFOF ¶ 5.) The informal review occurred on December 15, 2005. (DPFOF ¶ 9.)

Lou Williams ("Williams") is an employee and duly authorized representative of the City of Milwaukee Housing Authority. (DPFOF ¶ 6.) Williams advocated on behalf of the Housing Authority at that December 15, 2005, informal review, with regard to the denial of the plaintiff's application. (DPFOF ¶ 7.) Heidi Schultz ("Schultz") was the hearing examiner at that December 15, 2005 informal review. (DPFOF ¶ 8.)

At the hearing, the housing authority's representative, Williams, asserted that the plaintiff's denial was based on the plaintiff's November 2, 2003 arrest for domestic battery and his June 20, 2004 arrest for domestic battery. (DPFOF ¶ 10.) Williams cited to 24 C.F.R. § 982.553 in support of the Housing Authority's decision. (DPFOF ¶ 11.)

At the December 15, 2005, hearing, the plaintiff had an opportunity to dispute the accuracy and/or relevance of the criminal record and police report which the Housing Authority used to support its decision to deny the application. (DPFOF ¶ 12.) The plaintiff did not deny that such

3

arrests took place and did not dispute the accuracy of the materials contained in the criminal complaint and police records. (DPFOF ¶ 13.) Rather, the plaintiff asserted that his arrests and the materials contained in the records of those arrests were irrelevant and should not be considered because he had not been convicted following those arrests. (DPFOF ¶ 14.) The plaintiff also asserted at the December 15, 2005 hearing that his civil rights had been violated but could not explain how his rights had been violated. (DPFOF ¶ 15.)

Williams responded by noting that 24 C.F.R. § 982.553 does not require that an applicant be convicted of a crime before a housing authority may deny an application. (DPFOF ¶ 16.) Upon direct questioning on that subject by the hearing examiner, the plaintiff declined to state how it was that he believed he had been discriminated against. (DPFOF ¶ 17.) The hearing examiner upheld the initial denial of the plaintiff's application for Section 8 benefits by decision dated January 4, 2006. (DPFOF ¶ 18.)

### III. SUMMARY JUDGMENT STANDARDS

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment). "Summary Judgment is not appropriate 'if the evidence is such that a reasonable jury

4

could return a verdict for the nonmoving party'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson,* 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the material facts.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 477

(7th Cir. 1995)). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *Id.* (citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### IV. DISCUSSION

In support of their motion for summary judgment, the defendants argue that the City, Schultz, and Perez were never served with process in this action, and thus, the court does not have personal jurisdiction over such defendants. On April 5, 2007, the court issued an order addressing the service of process issue, stating, in pertinent part, as follows.

> Simply put, I am unsure as to whether proper service was made upon all of the defendants in this action. However, given that it was not the plaintiff's responsibility to ensure that proper service was effected because he is proceeding in forma pauperis, I am persuaded that good cause exists for the court to grant an extension of time for the plaintiff to effect service of process on the defendants. However, given that summary judgment briefs have already been filed, and such briefs also address the merits of this case, I will give the defendants an opportunity to waive any personal jurisdiction objections they may have prior to granting an extension of time pursuant to Rule 4(m) and ordering the U.S. Marshal to serve the defendants once again.
>
> Thus, <u>on or before April 16, 2007</u>, the defendants are ordered to file a letter indicating whether they waive any objections to personal jurisdiction in this action. If the defendants do wish to waive any personal jurisdiction objections, then the court will proceed to the merits based upon the summary judgment briefs already filed by both parties. If the defendants do not wish to waive their objections to personal jurisdiction, then the court will extend the time for service on the defendants pursuant to Rule 4(m), order the U.S. Marshal's Service to properly serve the defendants, and deny the defendants' motion for summary judgment without prejudice.

On April 11, 2007, the defendants filed a letter in response to the court's April 5, 2007 Order, waiving any service of process arguments and any objections to personal jurisdiction. Such being the case, the court will proceed to the merits of Perry's claims.

There are a number of arguments that the defendants present in support of their motion for summary judgment. Citing *Reed v. Village of Shorewood*, 704 F.2d 943 (7th Cir. 1983), they argue that, with respect to Perry's § 1983 claim, Schultz and Williams are immune from liability for acts taken in the performance of judicial or quasi-judicial acts. They also argue that, because there are no allegations that Perez was personally responsible for any of the alleged conduct upon which Perry predicates his § 1983 claim, Perry's claim against Perez must be dismissed. Finally, they argue that the Housing Authority's decision to deny Perry's application should be upheld.

*A. Defendants Schultz and Williams*

Defendants Schultz and Williams argue that they are immune from suit in this action. Specifically, Schultz argues that because she is being sued for actions she took in her capacity as the hearing examiner at the December 15, 2005 informal hearing, she is entitled to absolute quasi-judicial immunity. Likewise, Williams argues that because she is being sued for actions she took as the Housing Authority's advocate at the December 15, 2005 informal hearing, she too is entitled to absolute quasi-judicial immunity.

Judges and prosecutors are immune from liability for acts taken in the performance of judicial or quasi-judicial acts. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 270 (1993); *Reed v. Village of Shorewood*, 704 F.2d 943, 951 (7th Cir. 1983). The purpose behind the rule is to permit judges and prosecutors to make critical decisions without fear of litigation. As the Seventh Circuit has stated:

> Absolute immunity is available to members of quasi-judicial adjudicatory bodies when they perform duties that are functionally comparable to those of a judicial

7

officer.  "[T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have." Thus, the cloak of immunity is designed to prevent a situation in which decision-makers "act with an excess of caution or otherwise . . . skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct," out of a fear of litigation or personal monetary liability.

*Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 521-22 (7th Cir. 2001) (citations omitted).

In *Tobin for Governor*, the Seventh Circuit held that the members of the Illinois State Board of Elections "act in the functional capacity of judges when they rule on the validity of nomination petitions, which entitles them to quasi-judicial absolute immunity." *Id.* at 526.  Furthermore, the Seventh Circuit has held that a local liquor control commissioner acted in a judicial capacity when he revoked a liquor license, which entitled him to absolute immunity. *Reed*, 704 F.2d at 951-52. And, in *Coghlan v. Chapman*, the Seventh Circuit held that a hearing officer's denial of a petition challenging a parking ticket was a decision committed in the performance of the hearing officer's duties as a city agency official involved in the adjudication of city regulatory matters, and as such, the hearing officer was absolutely immune from liability for his decision. 1992 WL 97937 at *3 (7th Cir. 1992).

Similarly, here, I am satisfied that Schultz was acting in a quasi-judicial capacity when she presided over the informal hearing conducted on December 15, 2005 and rendered her decision upholding the Housing Authority's decision denying the plaintiff's rent assistance application. Indeed, Schultz presided over the informal hearing conducted on December 15, 2005, questioned Mr. Perry regarding his position on the denial of his application, and authored a written decision upholding the denial of Perry's application for admission to the rent assistance program. Simply put,

8

Schultz was acting in a quasi-judicial capacity and as such, she is entitled to absolute quasi-judicial immunity.

Furthermore, the law insulates prosecuting attorneys from liability for actions taken in the course of their official duties such as "presentation of the state's case at trial, and other conduct that is 'intimately associated' with the judicial process." *Mendenhall v. Goldsmith*, 59 F.3d 685, 689 (7th Cir. 1995) (quoting *Buckley*, 509 U.S. at 270). To be sure, Williams was not serving as a criminal prosecutor. Rather, Williams is being sued because of the actions she took while serving as the advocate for the City of Milwaukee Housing Authority at the December 15, 2005 informal hearing. But, the immunity to which criminal prosecutors are entitled has also been applied to governmental officers in administrative, rather than criminal proceedings. *Butz v. Economou*, 438 U.S. 478, 513 (1978). Indeed, in *Butz*, "the Supreme Court extended the protective blanket of absolute immunity to federal agency officials who perform functions comparable to those of the judge and prosecutor: hearing examiners (administrative law judges), agency officials who decide to initiate or continue administrative proceedings, and agency attorneys who present the evidence to the hearing officers." *Scott v. Schmidt*, 773 F.2d 160, 164 n.4 (7th Cir. 1985); *see id.* (holding that Illinois Racing Board members, stewards, and counsel all enjoyed absolute immunity because they were performing quasi-judicial acts when they participated in the proceedings wherein the plaintiff's license was suspended and his license application was denied).

Here, the record reveals that as the advocate for the City of Milwaukee Housing Authority at the December 15, 2005 hearing, Williams was "intimately associated" with the housing application review process. Indeed, Williams was essentially "presenting the Housing Authority's case," when she presented the City's argument in favor of affirming the denial of Perry's application at the

9

December 15, 2005 informal hearing. When Williams was advocating on behalf of the City Housing Authority's decision she was fulfilling her "duties as a city agency official involved in [the] adjudication of city regulatory matters." *Coghlan*, 1992 WL 97937 at *3 (7th Cir. 1992). Thus, I am satisfied that Williams was acting in a "quasi-judicial function." And, "a government attorney is entitled to absolute immunity when acting in a 'quasi-judicial' function." *Auriemma v. Montgomery*, 860 F.2d 273, 278 (7th Cir. 1988). Although Williams may not be a government *attorney*, she was clearly acting as the City's advocate at the December 15, 2005 hearing. *See Kissell v. Breskow*, 579 F.2d 425, 430 (7th Cir. 1978) (holding that because Executive Secretary's "duties involve[d] the investigating of alleged attorney misconduct, presenting recommendations to the Disciplinary Commission, and prosecuting cases of attorney misconduct before the Indiana Supreme Court, they are clearly as much quasi-judicial functions as are those of prosecutors"). Such being the case, I am satisfied that Williams is also entitled to absolute quasi-judicial immunity from suit.

*B. Defendant Perez*

Defendant Perez argues that because the plaintiff has not asserted any allegations against him personally, he should be dismissed from this action. "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Of course, a defendant cannot be personally liable under a theory of *respondeat superior. See Polk Co. v. Dodson*, 454 U.S. 312, 325, (1981). However, "'[a]n official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.'" *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985) (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)). That is, he "must know about the conduct and facilitate

10

it, approve it, condone it, or turn a blind eye . . . ." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

The plaintiff's amended complaint does not set forth any allegations suggesting that Perez was personally responsible for any alleged violation of the plaintiff's right to procedural due process. Nor has the plaintiff set forth any allegations, or evidence, in his response brief suggesting that Perez was personally involved in the alleged violation of the plaintiff's right to procedural due process. That said, the record reveals that it was Perez who signed the November 15, 2005 letter sent to Mr. Perry entitled "Denial of New Applicant Admission," and the January 6, 2006 letter entitled "Result of Informal Hearing/Review." (Williams Aff., Ex. C.) However, the plaintiff has not presented *any* evidence or argument suggesting that Perez knew about any alleged constitutional violation, and facilitated it, approved it, condoned it, or turned a blind eye to it. *See Jones*, 856 F.2d at 992.

To reiterate, a party opposing a properly supported summary judgment motion, must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Here, the plaintiff has not introduced *any* evidence to show that Perez was personally involved in the alleged deprivation of the plaintiff's right to procedural due process. Nor has the plaintiff introduced *any* evidence of a causal connection or affirmative link between the alleged violation of his procedural due process rights and defendant Perez. Consequently, and for all of the foregoing reasons, defendant Perez will be dismissed.

11

*C. Procedural Due Process Claim*

Perry alleges that the remaining defendant, that is, the City of Milwaukee, violated his right to procedural due process guaranteed by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983. However, in order to establish that a defendant municipality is liable under section 1983, the plaintiff must demonstrate that the constitutional deprivation was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978). Indeed, in *Lawrence v. Kenosha Cty.*, the Seventh Circuit summarized the relevant Supreme Court case law and concluded that there are three ways by which a municipality may be held liable under § 1983. 391 F.3d 837, 844 (7th Cir. 2004). "There must be: (1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled as to constitute a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused the constitutional injury." *Lawrence*, 391 F.3d at 844.

Here, none of the three factors set forth in *Lawrence* were pleaded in the plaintiff's amended complaint against the defendant City of Milwaukee. Nor has the plaintiff presented any evidence supporting any theory of liability against the City of Milwaukee in response to the defendants' motion for summary judgment. Indeed, the plaintiff has failed to identify any connection between his procedural due process claim and an express policy enforced by the City of Milwaukee. Nor has the plaintiff alleged a connection or nexus between his procedural due process claim and a settled, widespread practice of the defendant City of Milwaukee, not authorized by written law or express policy, that would constitute a custom or usage with the force of law. Finally, there is no assertion

12

that any "individual possessed final policymaking authority [respecting the actions at issue] and that such an individual denied . . . [the plaintiff] a constitutional right within the meaning of 42 U.S.C. § 1983." *Looper Maintenance Serv. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir.1999). Consequently, and for all of the foregoing reasons, the plaintiff's section 1983 claim against the City of Milwaukee cannot survive the defendant's motion for summary judgment.

D. *Judicial Review of Housing Authority's Decision*

Perry also seeks judicial review of the administrative decision denying him benefits under Section 8 of the Housing Act of 1937 ("Section 8"), 42 U.S.C. § 1437f. Section 8 authorizes the Secretary of the United States Department of Housing and Urban Development ("HUD") to establish various programs to aid lower-income families in obtaining a decent place to live and to promote economically mixed housing. *Medley v. City of Milwaukee*, 969 F.2d 312, 313 (7th Cir. 1992). These programs are financed by the federal government, regulated by the United States Department of Housing and Development ("HUD"), and administered by state public housing agencies ("PHAs"). *Id.* The Housing Authority of the City of Milwaukee is Milwaukee's PHA. *Id.*

Perry argues that the City of Milwaukee Housing Authority did not properly interpret the federal housing regulations when it denied his application for Section 8 housing benefits. However, because the Housing Authority was not created by federal law, the Administrative Procedure Act does not establish the scope of this court's review of its actions. *Clark v. Alexander*, 85 F.3d 146, 152 (4th Cir. 1996). The Seventh Circuit has not specifically addressed the appropriate scope of review of a municipal housing authority's administrative decision. Other courts that have addressed the appropriate scope of review have held that a court is only required to apply *de novo* review if the administrative decision is inconsistent with federal housing regulations. *Baldwin v. Hous. Auth. of*

13

*Camden*, 278 F. Supp. 2d 365, 374 (D. N.J. 2003) (citing *Clark*, 85 F.3d at 152); *see also Kelly v. Topeka Hous. Auth.*, 2004 WL 2378839 at *3 (D. Kan. 2004). If the Housing Authority's decision is consistent with federal housing regulations, "the court should afford the state agency's action reasonable deference, meaning that the action should be upheld unless it is found to be arbitrary or capricious." *Clark*, 85 F.3d at 152.

Turning to the facts of this case, the court finds that the Housing Authority's decision denying Mr. Perry Section 8 benefits was consistent with the federal housing regulations. The City of Milwaukee Housing Authority denied Perry's application for benefits based upon Perry's November 2, 2003 arrest for domestic battery and his June 20, 2004, arrest for domestic battery. Together with the November 17, 2005 letter denying his application for Section 8 benefits, the Housing Authority provided Perry with copies of the criminal complaint and police report, which the Housing Authority used to support its decision. Perry requested an informal hearing regarding his denial of benefits, and at the December 15, 2005 hearing, Perry had an opportunity to dispute the accuracy and/or relevance of the criminal record and police report which the Housing Authority used to support its decision to deny the application. At the hearing, Perry did not deny that such arrests took place and did not dispute the accuracy of the materials contained in the criminal complaint and police records.

Rather, Perry asserted that his arrests and the materials contained in the records of those arrests were irrelevant and should not be considered because he had not been convicted following those arrests. Williams, the Housing Authority's advocate at the hearing, responded by noting that 24 C.F.R. § 982.553 does not require that an applicant be convicted of a crime before a housing authority may deny an application. In a decision dated January 4, 2006, the hearing examiner upheld the initial denial of the plaintiff's application for Section 8 benefits. In her decision, the hearing

examiner reviewed the criminal complaints, both of which involved domestic violence inflicted upon the same individual, and concluded that there is "no doubt that the offenses occurred but that the victim did not press charges." (Williams Aff., Ex. C).

The federal housing regulations provide, in pertinent part, that a

> PHA may prohibit admission of a household to [the Section 8 program] if the PHA determines that any household member is currently engaged in, or has engaged in during a reasonable time before the admission: (1) Drug-related criminal activity; (2) Violent criminal activity; (3) Other criminal activity which may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents or persons residing in the immediate vicinity; or (4) Other criminal activity which may threaten the health or safety of the owner, property management staff, or persons performing a contract administration function or responsibility on behalf of the PHA (including a PHA employee or a PHA contractor, subcontractor or agent).

24 C.F.R. § 982.553(a)(2)(ii)(A). The regulations also provide that "[t]he PHA may terminate assistance for criminal activity by a household member as authorized in this section if the PHA determines, based on a preponderance of the evidence, that the household member has engaged in the activity, regardless of whether the household member has been arrested or convicted for such activity." 24 C.F.R. § 982.553(c). And, section 982.553(d)(1) provides that:

> [i]f a PHA proposes to deny admission for criminal activity as shown by a criminal record, the PHA must provide the subject of the record and the applicant with a copy of the criminal record. The PHA must give the family an opportunity to dispute the accuracy and relevance of that record, in the informal review process in accordance with § 982.554.

24 C.F.R. § 982.553(d)(1).

Because the Housing Authority's decision was consistent with the federal housing regulations, this court must give reasonable deference to the Housing Authority's decision. To reiterate, the agency's action "should be upheld unless it is found to be arbitrary or capricious." *Baldwin*, 278 F. Supp. 2d at 374 (internal quotations omitted). Nothing in the amended complaint

or the record demonstrates any arbitrary or capricious action by the Housing Authority. In conclusion, and for all the foregoing reasons, the Housing Authority's decision will be upheld, and the defendants' motion for summary judgment will be granted.

**NOW THEREFORE IT IS ORDERED** that the defendants' motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and hereby is dismissed;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 18th day of April 2007, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge